IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-CV-568

| | |
|---|---|
| JULIETTE GRIMMETT, RALSTON LAPP GUINN MEDIA GROUP, and the JOSH STEIN FOR ATTORNEY GENERAL CAMPAIGN, <br><br> Plaintiffs, <br><br> v. <br><br> DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, STELLA ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections, JEFF CARMON III, in his official capacity as Member of the North Carolina State Board of Elections, STACY EGGERS IV, in his official capacity as Member of the North Carolina State Board of Elections, TOMMY TUCKER, in his official capacity as Member of the North Carolina State Board of Elections, and N. LORRIN FREEMAN in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina, <br><br> Defendants. | **OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER OF DEFENDANTS CIRCOSTA, ANDERSON, CARMON, EGGERS, AND TUCKER** |

Rather than address the specific factual circumstances giving rise to this action alone, the Plaintiffs ask this Court to declare an unabridged, First Amendment right for anyone to lie about candidates for office. They also seek to enjoin the State Board of Elections from investigating such misconduct in derogation of the Board's duty. The Plaintiffs' requests overreach.

1

No such broad declaration or injunction is warranted. As a threshold matter, to the extent the scope of the challenged law is undetermined, this Court would properly abstain from reaching the Plaintiffs' case under Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496 (1941). If the Court does reach the merits, the Plaintiffs' motion fails. The statute at issue, which prohibits lying about a candidate in an effort to affect the candidate's chances of election, is facially constitutional. It serves the "indisputably . . . compelling state interest in preserving the integrity and reliability of its election process" and in "ensuring honest and fair elections." State v. Petersilie, 334 N.C. 169, 185, 432 S.E.2d 832, 841 (1993) (quoting Eu v. San Francisco Cnty. Democratic Comm., 489 U.S. 214, 231 (1989)).

Nor is there any need for the breadth of relief that the Plaintiffs seek, particularly as it pertains to the State Board of Elections. The complaint that prompted the investigation at issue was made in September 2020. [D.E. 1 ¶ 27]. And there is nothing left to enjoin the Board from doing; the Board concluded its investigation over a year ago, prior to July 14, 2021. [D.E. 1 ¶ 36]. With respect to the Plaintiffs' claims for relief against the State Board of Elections, the Plaintiffs cannot justify their failure to raise their concerns before now.

A federal court's assessment of whether a state statute is constitutional is a serious matter that ought to be determined, if at all, on a full record—not on an unnecessarily rushed motion for a temporary restraining order.

2

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendants Damon Circosta, Stella Anderson, Jeff Carmon III, Stacy Eggers IV, and Tommy Tucker are members of the North Carolina State Board of Elections, sued in their official capacities. [D.E. 1 ¶¶ 11-15]. For ease of reference, this memorandum will refer to them collectively as the "State Board of Elections."

Pursuant to N.C. Gen. Stat. § 163-22(d), the State Board of Elections investigates potential election law violations and irregularities and refers cases to the appropriate prosecutorial authorities when warranted. The State Board of Elections does not prosecute cases itself. Among the laws that the State Board of Elections is tasked with investigating is a law that makes it a crime "[f]or any person to publish or cause to be circulated derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity, when such report is calculated or intended to affect the chances of such candidate for nomination or election." N.C. Gen. Stat. § 163-274(a)(9) (the "Statute").

The Plaintiffs allege that the State Board of Elections received a complaint on September 29, 2020, that Attorney General Josh Stein and his campaign for re-election (the "Stein Campaign") violated the Statute. [D.E. 1 ¶¶ 27-28]. They allege that State Board of Elections investigators interviewed Ms. Grimmett and the Attorney General's chief of staff in March of 2021. [D.E. 1 ¶¶34-35]. The Plaintiffs further allege that by July 14, 2021—over one year ago—the State Board of Elections announced that its investigation had been completed and that its findings

3

and recommendation had been presented to the Wake County District Attorney's Office. [D.E. 1 ¶ 36].

The Plaintiffs offer no specific facts that the State Board of Elections has taken or threatened to take any further action on the complaint since. The lone assertion that <u>any</u> further action is imminent is the statement in the Declaration of Scott Falmlen that "[a]s reported to me by counsel for the Stein Campaign, enforcement action <u>by the office of the Wake County District Attorney</u> concerning the <u>Survivor</u> political advertisement appears imminent." [D.E. 5-1 ¶ 15 (emphasis added)]. On this slender reed, the Plaintiffs ask the Court to declare the Statute unconstitutional both facially and as applied—and to enjoin the State Board of Elections from taking any action to enforce the Statute in any case at all, even a case unrelated to the complaint against the Stein Campaign.

## QUESTION PRESENTED

Should this Court grant a temporary restraining order against the State Board of Elections when the Plaintiffs fail to show a likelihood of success on the merits and the extraordinary relief is unnecessary to maintain the status quo?

## LEGAL STANDARD

To obtain a temporary restraining order, a moving party bears the burden of showing four elements: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. <u>Winter v. Natural Res. Def. Council Inc.</u>, 555 U.S. 7, 20

4

(2008). Courts considering whether to impose injunctive relief consider each of these factors separately. Di Biase v. SPX Corp., 872 F.3d 224, 230 (4th Cir. 2017).

"[A] temporary restraining order shall not issue in the absence of 'specific facts [which] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party may be heard in opposition.'" Wilson v. Rabbar, No. 1:14CV622, 2015 WL 197368, at *2 (M.D.N.C. Jan. 14, 2015) (quoting Fed. R. Civ. P. 65(b)(1)(A)).

The Plaintiffs have established none of these factors as they relate to the State Board of Elections. Accordingly, Plaintiffs' motion should be denied.

## ARGUMENT

### I. Insofar as the Court Determines that the Statute's Scope is Undetermined, Pullman Abstention is Warranted.

As a threshold matter, if the Court determines that the Statute's scope is undetermined,[1] it may properly abstain from exercising jurisdiction here pursuant to Railroad Comm. of Texas v. Pullman, 312 U.S. 496 (1941). "Federal courts should abstain under Pullman where a case involves an open question of state law that is potentially dispositive inasmuch as its resolution may moot the federal constitutional issue." W. Virginia Citizens Def. League, Inc. v. City of Martinsburg, 483 F. App'x 838, 839–40 (4th Cir. 2012). "The doctrine thus both avoids impinging

---

[1] The State Board of Elections does not take the position that the Statute is unclear. Nevertheless, the Plaintiffs appear to argue that the law suffers from a lack of judicial interpretation in their characterization of the Statute as "archaic" and their observation that it has not been the subject of a reported case. [D.E. 1 ¶¶ 2, 4].

5

upon state sovereignty and forestalls premature consideration of sensitive federal controversies." Id.

Pullman abstention would be appropriate here because North Carolina should be permitted to interpret its own laws in the first instance, pursuant to its common-law tradition, in a manner that avoids doubt about its laws' constitutionality. See, e.g., Delconte v. State, 313 N.C. 384, 402, 329 S.E.2d 636, 647–48 (1985) ("The cardinal principle of statutory construction [in North Carolina] is to save and not to destroy. We have repeatedly held that as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the act."); Matter of Banks, 295 N.C. 236, 239, 244 S.E.2d 386, 388 (1978) (discussing construction of criminal statutes).

In fact, in State v. Petersilie, 334 N.C. 169, 432 S.E.2d 832 (1993), the North Carolina Supreme Court interpreted what is now codified adjacent to the Statute, N.C. Gen. Stat. § 163-274(a)(8). That statute criminalizes anonymous derogatory charges about candidates. 334 N.C. at 179. Petersilie interpreted the statute to reconcile the legislature's will with the federal and state constitutions. 334 N.C. at 180, 182-86 (citing Delconte, 313 N.C. at 402, 329 S.E.2d at 647). If this Court determines that the Statute's scope is undetermined, then North Carolina's courts should have a similar opportunity to interpret the Statute. The federalism and state-sovereignty considerations served by Pullman would counsel abstention.

6

## II. If the Court Reaches the Merits, the Plaintiffs Have Not Shown the Elements Required to Obtain a Temporary Restraining Order.

### A. Likelihood of Success on the Merits

The Plaintiffs have not shown a likelihood of success on the merits of their claims that the Statute is unconstitutional on its face or as applied to them. [D.E. 1 ¶¶ 52-61]. As to the facial claim, the assertion that the First Amendment absolutely protects the publication of knowingly false reports—that is to say, lying—about a candidate for the purpose of affecting that candidate's chances for election is incorrect.

The Statute is a content-based restriction on speech, but it is not necessarily invalidated under strict scrutiny. United States v. Alvarez, 567 U.S. 709 (2012), which Plaintiffs contend compels the application of strict scrutiny, was a plurality decision that failed to garner majority agreement on this point. See 567 U.S. at 724 (four justices applying strict scrutiny), 730-31 (two justices concurring in the judgment, but opining that intermediate scrutiny should apply), 739-40 (the remaining three justices dissenting, opining that the statute was constitutional).

Moreover, while Alvarez held that the First Amendment can protect false statements, it distinguished itself from cases like this one that involve content-based restrictions on speech in a "few historic and traditional categories of expression long familiar to the bar," including defamation. Id. at 717 (citing New York Times Co. v. Sullivan, 376 U.S. 254 (1964)). The Statute proscribes the precise conduct that Alvarez exempted from its holding. It mirrors the New York Times Co.

7

v. Sullivan standard by requiring knowledge of falsity or "reckless disregard" of truth or falsity. N.C. Gen. Stat. § 163-274(a)(9).

In short, Alvarez did not hold that the Constitution protects all lying. The Supreme Court has long recognized that lies "knowingly and deliberately published about a public official" for the purpose of political advantage hardly approach the "zenith" of First Amendment protection. See Garrison v. State of La., 379 U.S. 64, 75 (1964). Prohibitions on such falsehoods are among the categories of historically acceptable content-based restrictions that Alvarez permits. 567 U.S. at 717-18.

Finally, the Plaintiffs make no attempt to show that the Statute is facially invalid by demonstrating that no set of circumstances exists under which the Statute would be valid, that the Statute has no plainly legitimate sweep, or that the Statute is impermissibly overbroad. Cf. United States v. Chappell, 691 F.3d 388, 393-94 (4th Cir. 2012) (cautioning against reading Alvarez to signal broader facial unconstitutionality). A facial challenge, in any event, is strongly disfavored under established law. Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450 (2008). Thus, the Plaintiffs' effort to show a likelihood of success on the facial challenge fails at this stage.

### B. Likelihood of Irreparable Harm to the Moving Party Absent a Temporary Restraining Order and Balancing of the Equities

The Plaintiffs also bear the burden of showing that irreparable harm in the absence of injunctive relief is likely, not merely a possibility. Winter, 555 U.S. at 22. The Plaintiffs cannot make this showing or a showing that the equities favor them.

The Plaintiffs acknowledge that the State Board of Elections' investigation at issue concluded over one year ago. [D.E. 1 at ¶ 36]. Accordingly, there is no action of the State Board of Elections in this case that the Plaintiffs would have the Court enjoin. The Plaintiffs offer no explanation for their decision to wait over a year to hale the State Board of Elections into court on a bid for "emergency" injunctive relief. Their delay affects the equities and undercuts any showing of irreparable harm absent injunctive relief, at least with respect to the broad injunction they seek against the State Board of Elections. See, e.g., Cap. Assoc. Indus., Inc. v. Cooper, 129 F. Supp. 3d 281, 297 (M.D.N.C. 2015) ("CAI") (collecting cases).

The Plaintiffs' entire argument on this factor rests on the general proposition that the deprivation of a constitutional right, even for a short time, can constitute irreparable harm. [D.E. 6 at 15]. But this Court has recognized that this general proposition does not "automatically trigger a finding irreparable harm" in First Amendment cases. CAI, 129 F. Supp. 3d at 297 (quoting KM Enters., Inc. v. McDonald, No. 11-cv-5098, 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) (in turn quoting earlier cases)). The CAI court cautioned that "[c]ourts must be vigilant to ensure that this extraordinary remedy is not used to manufacture a sense of urgency where none exists[.]" Id. As it relates to the State Board of Elections, the Plaintiffs' motion does exactly this.

The Plaintiffs cannot show that irreparable harm is likely absent an Order enjoining State Board of Elections, and their unexplained delay weighs against

9

them in the balancing of the equities. The Plaintiffs fail to meet their burden of proving either of these elements.

### C. Whether an Injunction is in the Public Interest

The Plaintiffs devote two sentences to their argument that the public interest favors a preliminary injunction in this case. [D.E. 6 at 16]. The Plaintiffs seek to collapse this factor into likelihood of success on the merits. This does not satisfy the Plaintiffs' burden. See CAI, 129 F. Supp. 3d at 298 ("Although upholding constitutional rights serves the public interest, as [the plaintiff] notes, this case deserves to be addressed in a deliberate and thoughtful manner, which will ensure fairness, finality, and that no harm comes to the public by any changes to the [challenged] Statutes."). Because the Plaintiffs put forth no support for their assertion that interim relief is in the public interest, they have failed to demonstrate that this factor is satisfied.

To the contrary, enjoining <u>any and all</u> enforcement under the Statute—including that which is completely unrelated to the underlying facts here—would contravene the public interest. See Petersilie, 334 N.C. at 185, 432 S.E.2d at 841. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." Maryland v. King, 567 U.S. 1301 (2012) (Roberts, C.J., in chambers) (citation omitted).

### III. Plaintiffs Seek a Temporary Restraining Order that is Overbroad.

Even if the Plaintiffs were entitled to a temporary restraining order, the proposed Order they request is overbroad and unjustified under the circumstances.

10

The Plaintiffs' proposed Order is not limited to enjoining enforcement related to the complaint made against the Stein Campaign or its subject matter. Instead, the Plaintiffs would have this Court enjoin <u>wholly unrelated</u> enforcement actions to regulate knowingly false statements made to gain a political advantage. Because the Plaintiffs offer no support for their facial challenge to the Statute, enjoining enforcement of the Statute in all cases would be improper.

The Statute unquestionably serves a compelling state interest. <u>Petersilie</u>, 334 N.C. at 185, 432 S.E.2d at 841. That being so, any interim determination about its constitutionality ought not reach farther than is necessary to address the dispute between the parties before the Court—especially without the benefit of a complete record.

## CONCLUSION

For the foregoing reasons, the State Board of Elections respectfully requests that the Plaintiffs' request for a temporary restraining order be denied. In the alternative, if such an order is issued, the State Board of Elections respectfully requests that it be limited to enjoin enforcement only in the underlying case about which the Plaintiffs complain.

Respectfully submitted, this the 24th day of July, 2022.

<u>/s/ Thomas H. Segars</u>
Thomas H. Segars
N.C. Bar No. 29433
Barrett Johnson
N.C. Bar No. 46158
Ellis & Winters LLP
Post Office Box 33550
Raleigh, NC 27636

11

Tel: (919) 865-7000
Fax: (919) 865-7010
tom.segars@elliswinters.com
barrett.johnson@elliswinters.com
<u>Counsel for the State Board of
Elections Defendants</u>

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

The undersigned hereby certifies that this brief complies with the word limit requirements of the LR 7.3(d)(1), limiting the word count to no more than 6,250 words. In making this certification, the undersigned has relied upon the word count feature of word processing software.

This the 24th day of July, 2022.

/s/ Thomas H. Segars  
Thomas H. Segars