# DECLARATION OF WILLIAM D. MARSH

William D. Marsh, declares as follows pursuant to 28 U.S.C. §1746:

1. My name is William D. Marsh, and I am an Assistant Special Agent in Charge assigned to the Professional Standards and Compliance Unit within the North Carolina State Bureau of Investigation. In that capacity, one of my roles is to investigate cases of public corruption or government misconduct that are referred to us by a District Attorney or U.S. Attorney.

2. On June 23, 2021, the District Attorney for the 10th Prosecutorial District, Wake County, requested an investigation into a televised campaign advertisement produced and disseminated by the campaign to re-elect Joshua Stein as North Carolina Attorney General during the 2020 general election ("Stein campaign").

3. The televised advertisement made claims regarding the treatment of Sexual Assault Evidence Collection Kits ("SAECK"), otherwise known as rape kits, by the opposing candidate for Attorney General who was Forsyth County District Attorney Jim O'Neill.

4. The Wake County District Attorney's Office provided me with a copy of a report from the North Carolina Board of Elections and the accompanying investigative file from that agency regarding a complaint made to that agency regarding this same matter. Within that file was a copy of the 2017 SAECK Law Enforcement Inventory Report, which was published by the North Carolina State Crime Laboratory ("Crime Lab") on March 1, 2018 in response to a legislative

mandate from the year before requiring all local law enforcement agencies in the State to conduct an inventory of their SAECKs and report the results to the Crime Lab. Also included was a copy of the Crime Lab policies regarding submission of sexual assault evidence collection kits to the Crime Lab by law enforcement agencies. The Crime Lab was a part of the North Carolina Department of Justice and was under the ultimate authority and supervision of the Attorney General.

5. I was able to find two published campaign advertisements on the internet from the Stein campaign that were the subject of the election complaint and request for investigation, the main one being an ad titled "Survivor". In that ad, the speaker, later identified as Juliette Grimmett, made a statement that Jim O'Neill left 1,500 rape kits on a shelf untested and, therefore, should not be elected as Attorney General ("disputed ad"). The investigation has revealed that this ad ran on television stations in North Carolina until at least October 5, 2022.

6. The following subsections identify some of the interviews I conducted in this investigation along with a summary of certain statements made:

    a. On July 22, 2021, I interviewed Jim O'Neill, District Attorney for Forsyth County who acknowledged that he was a candidate for Attorney General in 2020 and was the subject of the disputed ad. He stated that the ad received a lot of notoriety and publicity in the fall of 2020 and that was due in large part because it was false. He stated that all of the untested sexual assault evidence collection kits in Forsyth County were in the possession of the local law enforcement agencies in that county and that he had no access to

those kits since those agencies are independent from his office, which was not in the chain of custody for any piece of evidence. He stated that the District Attorney's Office could not order a law enforcement agency to do anything, including submitting any type of evidence to the Crime Lab, but that they were there to help and provide guidance to them when needed. He also explained the submission policies of the Crime Lab at the time of the inventory report which prevented several categories of sexual assault evidence collection kits from being submitted, and therefore, untested.

      b.    On July 15, 2021, I interviewed Captain Steven Tollie, commander of the Criminal Investigations Division for the Winston-Salem Police Department, who was involved in his agency's response to the inventory report and later effort to address the backlog. He stated that this effort was internal to his agency, and he did not seek any guidance or assistance from the District Attorney's Office, and that any consultation between them would have been for prosecution purposes and not about which sexual assault evidence collection kits to submit for testing. He stated that the District Attorney's Office had no authority over the Winston-Salem Police Department or its investigations, but that there was a professional relationship between their organizations. He reviewed the disputed ads and stated that they were not accurate statements as they pertained to Jim O'Neill and the sexual assault evidence collection kits.

c. On July 16, 2021, I interviewed Brittany Gomez, manager of the Evidence Section for the Winston-Salem Police Department during the relevant time period. She stated that there had never been an item of evidence transferred to the District Attorney's Office for storage or testing, and that under their retention policy SAECKs would not be destroyed until the end of any adjudicated sentence but the practice which was established by the Winston-Salem Police Department was sexual assault evidence collection kits would not be destroyed. In fact, the oldest sexual assault evidence collection kit held by her agency at that time was from 1982. Ms. Gomez further discussed the process for submission of sexual assault evidence collection kits once the sexual assault kit initiative was underway. She indicated that each case had to be reviewed and the State Crime Lab had to approve the list of kits for testing prior to them being submitted. She further indicated that the general practice was to submit kits in batches of 25-50 kits at a time. Her agency began this submission process in 2017.

d. On July 19, 2021, I interviewed Lieutenant Christopher Davenport, former supervisor of the Investigative Services Division for the Forsyth County Sheriff's Office from 2018-2019. He stated that the sexual assault evidence collection kits were the property of his agency and that the Forsyth County District Attorney's Office did not have any formal authority over his agency but could make suggestions and they were never in custody of

evidence. He reviewed the "Survivor" ad and said it was inaccurate because Jim O'Neill did not have the sexual assault evidence collection kits.

    e.    On August 16, 2021, I interviewed Lieutenant Derrick Crews, supervisor of the Criminal Investigation Division for the Kernersville Police Department during the relevant time. He stated that he was not aware of any formal authority the District Attorney's Office had over his agency and that they were not in the chain of custody for any piece of evidence. Furthermore, he stated at that time any decision about sending the sexual assault evidence collection kits for testing would have been made by his agency and was based on the policies of the Crime Lab at the time. The District Attorney's Office would provide guidance and collaborate about prosecution decisions, but that one or the other agency could not order or command the other to take an action.

    f.    On August 26, 2021, I interviewed Juliette Grimmett in the presence of Special Agent in Charge T.D. Ammons and attorney Press Millen. She stated that she was a part time employee of the North Carolina Department of Justice serving as the Sexual Assault Kit Initiative Victim Policy Strategist when the ad was recorded, but was not acting in the capacity of her employment when she appeared in this ad. Upon eventually receiving the script for the disputed ad, she did a quick internet search to check on its veracity and found a result that referenced Jim O'Neill and 1,500 untested sexual assault evidence collection kits. She also placed her trust in the campaign to have accurate information about this assertion. She stated that

Jim O'Neill was responsible as an individual in his official capacity as District Attorney for the untested sexual assault evidence collection kits in Forsyth County and believed that he had the authority to order a local agency to perform an act regarding a piece of evidence.

  g. On September 21, 2021, I interviewed Scott Falmlen, treasurer for the Stein campaign committee, in the presence of attorney Press Millen. He stated that he was involved with the finances of the campaign committee and paid the bills for any advertisement done by the campaign but was not involved in the production of any of them.

  h. On September 24, 2021, I interviewed Seth Dearmin, Chief of Staff for the North Carolina Department of Justice and former campaign manager for the Stein campaign during the previous election in 2016, in the presence of SAC T.D. Ammons and attorney Press Millen. He stated that Jim O'Neill was the opponent during the 2020 election for Attorney General and was saying untruths about untested sexual assault evidence collection kits being at the Crime Lab in interviews and on Twitter. The disputed ad was created to counter those statements. He further described a prosecutor's role under our State Constitution to advise local law enforcement agencies in their county to test the sexual assault evidence collection kits in their district, which he explained means to work with those local law enforcement agencies to prosecute crimes and seek justice. He acknowledged that a District Attorney

could order a law enforcement agency to take an action, but it was a question whether that agency would take such action.

  i. On October 1, 2021, I interviewed Eric Stern, campaign manager for the Stein campaign during the 2020 election for Attorney General in the presence of attorney Press Millen. He stated that campaign advertisements were created by a hired media firm and their draft scripts were edited by the campaign. He stated that he did not know the formal authority of a District Attorney but asserted that a District Attorney had a constitutional role of advising and prosecuting cases and was responsible for any untested sexual assault evidence collection kits. He was aware that Jim O'Neill had been the District Attorney in Forsyth County since 2009 and that the campaign relied on a research firm to verify their advertisements, including for the disputed ad.

  j. On October 28, 2021, I interviewed Jason Ralston, whose firm produced the disputed ad, in the presence of attorney Press Millen. He stated that he was the main drafter and keeper of the scripts for the Stein campaign and that all the information for the disputed ad came from the campaign. All revisions of any advertisement were done as part of regular weekly strategy calls with the campaign. He does not recall any conversation about a District Attorney's authority other than they are the chief prosecutor in their district and responsible for serving justice in their county.

k. On December 22, 2021, I interviewed Attorney General Joshua Stein in the presence of SAC T.D. Ammons and attorney Press Millen. He was a candidate up for re-election during the 2020 general election for Attorney General and stated the disputed ad was an important corrective because his opponent introduced the concept of untested sexual assault evidence collection kits on the shelves of the Crime Lab when they were in fact being held in law enforcement offices. He stated elected District Attorneys have the duty to advise officers and prosecute criminal violations in their jurisdiction but acknowledged there were no statutory provisions that gave them authority over a local law enforcement agency. He stated that even the Attorney General did not have the authority to require a law enforcement agency to act. He stated that almost all of the categories which prevented submission of sexual assault evidence collection kits to the Crime Lab were removed by 2017 when he first took office as Attorney General and that many of the untested rape kits found in Forsyth County could have been tested by then. He stated that he reviewed the ad prior to the campaign releasing it for airing.

7. I received, collected, and reviewed several documents, reports, and recordings in the course of this investigation. I prepared a final report and submitted it, along with all the supporting materials, to the Wake County District Attorney's Office for their consideration and possible action.

8. I am informed that lawyers representing Stein and the campaign contacted the prosecutor handling this matter in August 2021 to discuss the matter.

I am informed that those lawyers and the prosecutor had multiple discussions about the matter between August 2021 and July 2022. I am informed that on July 7, 2022, the prosecutor handling this matter informed the lawyers representing Stein and the campaign that it was the intent of the Office of the District Attorney to make a presentment to the grand jury later in July 2022. I was scheduled to appear before the Grand Jury of Wake County on July 25, 2022.

I declare under penalty of perjury the foregoing to be true and correct.

This the 31st day of July, 2022.

_____
William D. Marsh
Assistant Special Agent in Charge
North Carolina State Bureau of Investigation