UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA

No. 1:22-CV-568

| | |
|---|---|
| JULIETTE GRIMMETT, RALSTON LAPP GUINN MEDIA GROUP, and the JOSH STEIN FOR ATTORNEY GENERAL CAMPAIGN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>N. LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina,<br><br>　　　　　　　Defendant. | **REPLY TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ON MOTION FOR PRELIMINARY INJUNCTION** |

NOW COMES Defendant N. LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District, and respectfully submits this reply to Plaintiffs' Supplemental Memorandum on motion for preliminary injunction.

I. **Criminal Defamation Statutes With a Knowledge of Falsity Element, Like the Statute at Issue Here, Are Constitutional Under *Garrison* and and *Alvarez* and Regulate Speech Not Protected by the First Amendment.**

This Court requested briefing on *Frese v. MacDonald*, 512 F.Supp.3d 273, 275 (D.N.H. 2021). *Frese* confirms and applies the holding in *Garrison* reaffirmed in *Alvarez* -- criminal defamation statutes (like the Statute here) are constitutional and not violative of the First Amendment under *Garrison* and *Alvarez*, so long as they

contain a knowledge of falsity element, because they regulate speech that is not protected by the First Amendment.

*Frese* involved a facial First Amendment challenge to the New Hampshire criminal defamation statute. The plaintiff contended that the law "violated the First Amendment for criminalizing false and defamatory speech or, in the alternative, for criminalizing false speech criticizing public officials." 512 F.Supp.3d at 285. The district court found *Garrison* completely controlling:

> Under <u>Garrison</u>, the State may impose criminal sanctions against false and defamatory speech made with actual malice without violating the First Amendment. As such, Frese's allegation that the criminal defamation statute unlawfully criminalizes any and all false, defamatory speech fails to state a First Amendment claim upon which relief can be granted.

*Id.* Other federal courts have likewise rejected facial First Amendment challenges to state and local criminal defamation statutes, where the statute contains a knowledge of falsity element compliant with *Garrison*. *See Phelps v. Hamilton*, 59 F.3d 1058, 1070-73 (10th Cir. 1995); *How v. City of Baxter Springs*, 369 F.Supp.2d 1300, 1304-05 (D. Kan. 2005). This is because defamatory speech falls into one of the traditional categories of speech not protected by the First Amendment. *Alvarez*, 567 U.S. at 717.

Thus, criminal defamation statutes -- like the Statute here -- are constitutional and do not violate the First Amendment. This is the end of the inquiry as to a facial constitutional challenge -- there is no strict scrutiny (or other) analysis, and the facial challenge fails. The statutes at issue in *Driehaus*, *Arneson*, *Lucas*, and *Rickert* relied

2

on by Plaintiffs are not criminal defamation statutes, because they seek to regulate all false political speech of a certain category -- not just false defamatory speech.[1]

There is no question that the Statute at issue here is a criminal defamation statute. It regulates only knowingly false "derogatory" speech about a candidate intended to affect that candidate's electoral chances. North Carolina law traditionally and specifically defines defamation to include false "derogatory" statements. *See, e.g. Boyce & Isley, PLLC v. Cooper*, 568 S.E.2d 893, 898 (N.C. App. 2002) (defamation includes "false words imputing to a merchant or business man conduct derogatory to his character"). The Statute requires that the false derogatory statement be made knowingly or with reckless disregard of its falsity, thereby complying with *Garrison* and *Sullivan*. As such, the Statute regulates speech that is not protected by the First Amendment. No strict scrutiny or other analysis is necessary -- the Statute does not regulate speech protected by the First Amendment, and Plaintiffs' facial challenge fails.[2]

---

[1] *Driehaus* in fact specifically notes that "Ohio's laws reach not only defamatory and fraudulent remarks, but *all* false speech regarding a political candidate, even that which may not be … defamatory or libelous" in determining a strict scrutiny examination is necessary. *Driehaus*, 814 F.3d at 473.

[2] The fact that political speech may be involved does not change this result. Defamatory speech is defamatory speech, political or not, and therefore is not protected by the First Amendment. *Garrison* makes this clear. *Garrison*, 379 U.S. at 216 ("Although honest utterance, even if inaccurate may further the fruitful exercise of the right of free speech, it does not follow that the lie, knowingly and deliberately published about a public official, should enjoy a like immunity"). *Frese* confirms this point -- the plaintiff in *Frese* challenged the New Hampshire criminal defamation statute specifically on the ground that the law "criminaliz[ed] false speech criticizing public officials." 512 F.Supp.3d at 285. The district court in *Frese*, citing *Garrison*, flatly rejected the First Amendment challenge.

3

*Frese* is an acknowledgment that *Garrison* means what it says -- criminal defamation statutes are constitutional, so long as they have a knowledge of falsity element. The Statute here does, and is therefore constitutional. No strict scrutiny analysis is necessary, because the Statute regulates speech not protected by the First Amendment. That should be the end of the inquiry as to any facial challenge to the Statute under the First Amendment. Plaintiffs fail to establish likelihood of success on the merits.

## II. Assuming Arguendo That Strict Scrutiny Analysis Is Necessary, the Statute Is Constitutional.

Plaintiffs contend that a strict scrutiny standard applies to their facial challenge to the Statute, because political speech is involved. As explained above, this analysis is not required, as the regulated speech is outside of the protection of the First Amendment, political or not. But even assuming *arguendo* that such analysis is necessary, the Statute is constitutional.

Strict scrutiny is not the impossible standard that Plaintiffs paint it to be. In fact, two of the post-*Alvarez* cases Defendant has cited in its opposition, where courts <u>reject</u> facial First Amendment challenges to statutes regulating political speech, apply the strict scrutiny standard to the regulation in question. *Linert v. MacDonald*, 901 N.W.2d 664, 667-70 (Minn. App. 2017) (applying strict scrutiny standard and rejecting facial First Amendment challenge to statute prohibiting person or candidate from knowingly making a false statement that the candidate hasthe support of a major political party); *Myers v. Thompson*, 192 F.Supp.3d 1129, 1138-42 (D. Mt. 2016) (applying strict scrutiny standard and rejecting facial challenge to state bar rule

4

prohibiting false statements relating to judges and judicial elections).  In both cases, the court finds the statute meets the strict scrutiny standard.

Another court likewise rejected a facial First Amendment challenge to a statute regulating political speech on the grounds that *Alvarez* made clear that false speech is not protected by the First Amendment when made "for the purpose of material gain" or "material advantage," or the speech inflicts a "legally cognizable harm."  *Make Liberty Win v. Cegavske*, 570 F.Supp.3d 936, 941-42 (D. Nev. 2021). And all of the statutes at issue in these three cases applied broadly to all knowing false statements about the subject matter at issue, unlike the Statute here which is further restricted to knowingly false statements that are "derogatory."  Plaintiffs overstate the burden of a strict scrutiny analysis.

In any event, the Statute meets all of the criteria erected by Plaintiffs in their brief.  (DE-19 at 5).  First, the Statute serves the compelling state interest of preventing "fraud and libel" in an election.  *McIntyre v. Ohio Elections Commission*, 514 U.S. 334, 349 (1995).  It does so in a narrowly tailored fashion -- it regulates only knowingly false "derogatory" speech about a candidate, that is "circulated or intended to affect the chances of such candidate for nomination or election."  This statute is North Carolina's statutory defense against knowingly false and derogatory statements about a candidate intended to affect the candidate's electoral chances -- in contrast to the statute found infirm in *McIntyre*, wherien the Supreme Court found the Ohio law barring anonymous leaflets unconstitutional and not narrowly tailored to the important state interest of preventing "fraud and libel" in elections because

5

Ohio had other statutes that directly protected that interest and therefore the anonymous leaflet statute was not the State's "principal weapon against fraud." *McIntyre*, 514 U.S. at 350.

In contrast, here, the Statute is the legislature's effort to prevent knowingly false derogatory statements being made about a candidate, intended to affect that candidate's electoral chances. As such, it is "actually necessary," *Alvarez*, 567 U.S. at 725, to achieve its compelling state interest in protecting against fraud and libel in elections. Moreover, the fact that the Statute contains "a specific intent requirement -- that false claims be *knowingly* made -- ensures" that the Statute is not overbroad and is narrowly tailored to achieve North Carolina's compelling goal. *Linert*, 901 N.W.2d at 668-69 (applying strict scrutiny and upholding state statute regulating political speech over First Amendment challenge, finding intent requirement to eliminate overbreadth concerns).

In today's day and time, the goal of preventing knowingly false and derogatory statements from being made in the electoral context is more important than ever. Recent events only confirm this point. The Statute is narrowly tailored to achieve that compelling goal, and is North Carolina's statutory defense against that evil. Even assuming *arguendo* a strict scrutiny analysis is necessary, the Statute meets the test.

## CONCLUSION

Criminal defamation statutes that meet the *Sullivan* and *Garrison* knowledge of falsity standard -- like the Statute here -- are constitutional and regulate speech

not protected by the First Amendment. Accordingly, no strict scrutiny analysis is necessary, and the facial challenge to the Statute under the First Amendment should be rejected. For the reasons set out herein, Defendant respectfully requests that Plaintiff's motion for preliminary injunction be denied.

This the 2nd day of August, 2022.

**GAMMON, HOWARD & ZESZOTARSKI, PLLC**

/s/ Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
State Bar No. 21310
P.O. Box 1127
Raleigh, NC 27602
(919) 521-5878
jzeszotarski@ghz-law.com

Counsel for Defendant N. Lorrin Freeman, in her official capacity as District Attorney of the 10th Prosecutorial District

7

# CERTIFICATE OF WORD COUNT
# PURSUANT TO LOCAL RULE 7.3(d)

    Undersigned counsel certifies that this brief complies with Local Rule 7.3(d), in that the word count function of Microsoft Word shows the brief to contain 1,732 words, excluding those portions of the brief permitted to be excluded by the Rule.

    This the 2nd day of August, 2022.

**GAMMON, HOWARD & ZESZOTARSKI, PLLC**

/s/ Joseph E. Zeszotarski, Jr.
Joseph E. Zeszotarski, Jr.
State Bar No. 21310
P.O. Box 1127
Raleigh, NC 27602
(919) 521-5878
jzeszotarski@ghz-law.com

Counsel for Defendant N. Lorrin Freeman, in her official capacity as District Attorney of the 10th Prosecutorial District