# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:22-CV-568

| | |
|---|---|
| JULIETTE GRIMMETT, RALSTON LAPP GUINN MEDIA GROUP, and the JOSH STEIN FOR ATTORNEY GENERAL CAMPAIGN, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| N. LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina, | ) ) ) ) ) |
| Defendants. | ) |

_____

## DECLARATION OF RIPLEY RAND

RIPLEY RAND declares as follows:

1. I am a member of the bar of this Court, a partner in the law firm of Womble Bond Dickinson (US) LLP, and competent to make this Declaration. I have represented the Josh Stein for Attorney General Campaign ("Stein Campaign") in connection with issues arising out of its political advertisement referred to as "*Survivor*."

2. The testimony contained in this declaration is tendered by me in conformity with Rule of Professional Conduct 3.7(a)(1), and is believed by me to relate solely to uncontested facts. It is based on my personal knowledge and/or my review of the business records of Womble Bond Dickinson (US) LLP (the "Firm").

3. In this Declaration, I seek to summarize the timeline of my understanding and perception of the investigations by the North Carolina State Board of Elections (BOE) and Wake County District Attorney's Office concerning *Survivor* during the 22-month period from October 1, 2020, through the filing of the Complaint in this declaratory judgment action on July 21, 2022.

4. On October 1, 2020, the manager of the Stein Campaign notified our Firm that a complaint had been filed with the BOE by the campaign of its 2020 general election opponent concerning the *Survivor* advertisement. Later that same day, a colleague of mine responded in writing to the BOE with respect to the complaint.

5. On October 22, 2020, Candace Marshall, BOE Associate General Counsel, reached out to my colleague with some specific questions concerning the content of *Survivor*. On October 27, 2022, my colleague answered questions concerning *Survivor* posed by Ms. Marshall and BOE Senior Lead Investigator, Matt Martucci. On October 28, 2020, my colleague confirmed in writing (by email) to the BOE an answer to a question previously posed by the BOE.

6. On October 29, 2020, counsel for the opponent's campaign filed a supplemental complaint with the BOE, which was provided to the Firm. On November 2, 2020 (the day before Election Day), my colleague responded to Ms. Marshall that the Stein Campaign continued to stand by its earlier response.

7. On November 5, 2020 (two days after the election), Ms. Marshall informed my colleague that the complaint filed with the BOE was the subject of a public records request by a reporter from WUNC Radio.

8. After November 5, 2020, our records indicate that we heard nothing further from the BOE on the subject for approximately four months. On March 4, 2021, Ms. Marshall sent an email to Ms. Grimmett, the spokesperson in *Survivor*, seeking an interview on the subject. My colleague was copied on that email.

9. That interview was conducted remotely on March 15, 2021, by Ms. Marshall and Mr. Martucci, with my colleague in attendance. On March 22, 2021, Ms. Marshall requested an interview with the Attorney General's Chief of Staff. That interview took place (also remotely) on March 29, 2021. On April 1, 2021, my colleague provided the BOE with some additional written information requested in that interview.

10. After April 1, 2021, we heard nothing further from the BOE for approximately 3½ months until July 14, 2021. On that day, Ms. Marshall sent an email to my colleague stating that:

> We completed our investigation and presented our findings and recommendation to ADA [David] Saacks in the Wake County office. I hope to have more information in the following weeks.

11. Since that date, we have had no further communication with BOE concerning its investigation or this matter generally.

12. About the same time that we received our final communication from the BOE, we were informed that the Wake County District Attorney's Office would be conducting a further investigation into *Survivor* using agents from the State Bureau of Investigation (SBI). I had a preliminary conversation with the elected Wake County District Attorney on July 15, 2021, to ask her how her office intended to handle the investigation. (I later learned that she had reached out to the NCSBI Special Agent in

-3-

Charge by letter dated June 23, 2021, concerning the further investigation. A true and correct copy of that letter is attached to this Declaration as Exhibit A.)

13. On August 17, 2021, I had a preliminary meeting about the matter with the Assistant District Attorney in charge of the investigation, a senior prosecutor in the Wake County District Attorney's Office. At that time, he indicated that he had no report of the investigation but would keep us informed. He also stated that he hoped to have the matter resolved by the end of 2021. As more fully described below, I had no further contact with him on the matter of *Survivor* until late February 2022, some seven months later.

14. Over the course of the five-month period from August through December 2021, to my knowledge the Stein Campaign complied with each and every request of the SBI investigators for interviews and documents. Ms. Grimmett was re-interviewed on August 26, 2021. On September 21, 2021, the Stein Campaign Treasurer was interviewed. On September 24, 2021, the Chief of Staff was re-interviewed, and, on October 1, 2021, the Campaign's 2020 manager was interviewed by telephone from Pennsylvania where he was managing another campaign. Later that same month, on October 28, 2021, Jason Ralston, whose firm, Ralston Lapp Guinn Media Group, produced *Survivor*, was interviewed by telephone from Washington where he works. At the request of the SBI, we provided to them the documents reflecting the fact checking of *Survivor* undertaken by an independent research firm. Finally, on December 22, 2021, the Attorney General was interviewed in what was described by the SBI agent as his final interview.

15. Having heard nothing concerning the investigation for two months, I emailed the senior prosecutor in charge of the investigation on February 21, 2022, to request information about the status of the matter. On February 25, 2022, he informed me that he was still waiting to get a report from the SBI.

16. On April 19, 2022, I emailed the senior prosecutor again to request information about the status of the matter. He responded that he now had the report and would be back in touch with me. The following day, I sent him a legal memorandum prepared by a colleague outlining the constitutional infirmities with N.C. Gen. Stat. § 163-274(a)(9), the statute under which the investigation had been conducted.

17. On May 24, 2022, I emailed the senior prosecutor again to inquire about the status of the matter and offered to meet with him in person. On June 1, 2022, one of my colleagues and I met with the senior prosecutor at the Wake County Justice Center. At that meeting, he indicated that he hoped to make a decision on the matter in June. The following week, on June 8, 2022, I provided him with a further memorandum analyzing the factual basis concerning *Survivor* and the reasons why the statements in it were not false.

18. On Thursday, July 7, 2022, the senior prosecutor emailed me to inform me that he had made a decision to move forward with the prospect of seeking the grand jury's review of the matter and of seeking a presentment recommending that one or more people involved in *Survivor* be charged with violations of N.C. Gen. Stat. § 163-274(a)(9).

19. On Thursday, July 14, 2022, I emailed the senior prosecutor to request the opportunity to meet with him to discuss a number of issues related to the grand jury's review of a presentment. The senior prosecutor responded to me that same day with several dates that he was available. On Friday, July 15, 2022, the senior prosecutor agreed to a meeting on Tuesday, July 19, 2022.

20. On Tuesday, July 19, 2022, my colleague and I met again with the senior prosecutor. During this meeting, the senior prosecutor briefly outlined his intent and timing with regard to seeking a presentment in connection with the grand jury's consideration of *Survivor*.

21. Because of the serious doubts concerning the constitutionality of the statute, my colleague and I offered at the July 19 meeting to seek a declaratory judgment on the constitutionality issue before the initiation of any grand jury review of the issues related to *Survivor*. We also offered a tolling agreement with respect to the statute of limitations in connection with that proposed process. The senior prosecutor indicated during the July 19 meeting that he would speak with the elected District Attorney concerning a declaratory judgment action and be back in touch with me.

22. The following day, Wednesday, July 20, 2022, the senior prosecutor called to inform me that the District Attorney's Office would not agree to the declaratory judgment proposal but would instead proceed with the grand jury's review of the matter on Monday, July 25, 2022.

23. This declaratory judgment action was filed on July 21, 2022, less than 24 hours after that discussion.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of August, 2022, at New Bern, North Carolina.

_____
Ripley Rand

# EXHIBIT A



## State of North Carolina
## General Court of Justice
### Tenth Prosecutorial District

**N. LORRIN FREEMAN**
**DISTRICT ATTORNEY**

P. O. BOX 31
RALEIGH, N.C. 27602-0031

**TELEPHONE:**
**(919) 792-5000**

Special Agent in Charge Tom Ammons
State Bureau of Investigation
Special Investigations Unit
3320 Garner Road
Raleigh, NC 27610

June 23, 2021

Re: Request for Assistance

Dear SAC Ammons:

The North Carolina Board of Elections investigators recently concluded an investigation into allegations of violations of campaign advertising laws arising out of an advertisement aired on television during the 2020 campaign for North Carolina Attorney General regarding the treatment of rape kits by candidate and Forsyth County District Attorney Jim O'Neill. N.C.G.S. 163-247(a)(9) prevents the publishing or circulating of derogatory ads that a person knows to be false, or the publishing of such ads in reckless regard as to whether they are true. I am writing to request your agency's assistance in further investigating whether a violation of N.C.G.S. 163-247(a)(9) has occurred.

Near the inception of their investigation, the Board of Elections staff contacted me in my capacity as District Attorney for Wake County to coordinate investigative efforts. At that time, I assigned this matter to senior prosecutor David Saacks and authorized him to make all decisions regarding this matter going forward in an effort to avoid any appearance of impropriety as my day to day work requires that I have regular and ongoing contact with both former candidates.

In completing their investigation, the Board of Elections neglected to take investigative steps requested by Assistant District Attorney Saacks. Having reviewed their investigation, he has determined it is appropriate that the State Bureau of Investigation further investigate this matter. To that end, I am requesting your agency's assistance. I ask that you coordinate all further actions in the matter with Mr. Saacks.

Thank you for your attention to this matter.

With kind regards, I remain,

Sincerely,

N. Lorrin Freeman