IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JULIETTE GRIMMETT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:22-CV-568 |
| | ) | |
| DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections, et al., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

     A North Carolina statute makes it a crime to publish or circulate false derogatory reports about political candidates in elections with knowledge the report is false or in reckless disregard for its truth and when the report is intended to affect the candidate's electoral chances. The defendant, N. Lorrin Freeman, Wake County District Attorney, expects to present testimony to a grand jury for it to determine whether to initiate criminal proceedings for violation of this statute based on a political advertisement published and circulated during North Carolina's 2020 general election for Attorney General. The plaintiffs, persons and entities involved with the production and circulation of that advertisement, contend the statute on its face violates the First Amendment and seek a preliminary injunction barring enforcement.

     The plaintiffs are not likely to succeed on the merits of their facial constitutional claim. The statute criminalizes false defamatory speech about public officials made with

actual malice; such a statute is constitutionally permissible. Assuming a more exacting level of scrutiny applies because the statute is directed to political speech, the statute advances compelling state interests in protecting against fraud and libel in elections and is narrowly tailored to serve those interests. The motion for preliminary injunction will be denied.

## I. The Parties

The plaintiffs in this dispute are Juliette Grimmett, who appeared in the advertisement and spoke the words at issue, Doc. 1 at ¶ 8; Doc. 5-2 at ¶ 7, Ralston Lapp Guinn Media Group, which produced the ad and was involved in placing it on television, Doc. 1 at ¶ 9; Doc. 5-2 at ¶ 5, and the Josh Stein for Attorney General Campaign, which paid to produce the ad and paid for the ad's media placement. Doc. 1 at ¶ 10; Doc. 5-2 at ¶ 5. The defendant is the Wake County District Attorney, who is sued in her official capacity.[1]  Doc. 1 at ¶ 16.

## II. The Statute

Section 163-274(a)(9) makes it a Class 2 misdemeanor

> "[f]or any person to publish or cause to be circulated derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity, when such report is calculated or intended to affect the chances of such candidate for nomination or election."

N.C. Gen. Stat.§ 163-274(a)(9).

---

[1] The plaintiffs initially named the members of the North Carolina State Board of Elections in their official capacities as well, Doc. 1 at ¶¶ 11–15, but the plaintiffs have since voluntarily dismissed these defendants. Doc. 17.

### III. The Facts

In 2020, Josh Stein and Jim O'Neill ran for Attorney General of North Carolina. Doc. 5-1 at ¶ 2. Mr. O'Neill was the Forsyth County District Attorney. *Id.* The Stein Campaign paid Ralston Lapp to produce and coordinate the media placement of a political advertisement known as "Survivor" during the lead-up to the general election. Doc. 5-2 at ¶ 5. Ms. Grimmett, one of the plaintiffs, appears in the advertisement, and states "[a]s a survivor of sexual assault that means a lot to me and when I learned that Jim O'Neill left 1,500 rape kits on a shelf leaving rapists on the streets, I had to speak out." *Id.* at ¶ 7. "Survivor" was broadcast on television stations in North Carolina during September and October 2020. Doc. 5-1 at ¶ 7.

In September 2020, an attorney for the "Friends of Jim O'Neill" campaign committee filed a complaint with the North Carolina State Board of Elections asserting that "Survivor" contained a false "derogatory report" about Mr. O'Neill and violated § 163-274(a)(9). *Id.* at 7–10. The attorney asked the Board to investigate the allegations, find probable cause, and refer the complaint to the Wake County District Attorney. *Id.* at 10.

By July 2021, the Board had completed its investigation and presented its findings and recommendation to the Wake County District Attorney's Office. *Id.* at ¶ 13. After further investigation by the State Bureau of Investigation, District Attorney Freeman's office decided in July 2022 to present the evidence to a grand jury for a determination of whether criminal charges arising out of the "Survivor" advertisement should be brought

3

for violation of § 163-274(a)(9). *Id.* at ¶ 14; Doc. 22-1 at ¶ 18; *see also* § 15A-641(c) (law on presentments to grand jury for misdemeanors).

The plaintiffs cooperated with the investigations. Doc. 5-1 at ¶¶ 11–12; Doc. 18-1 at ¶ 6. An assistant District Attorney informed representatives of the plaintiffs of the upcoming grand jury proceedings and the plaintiffs promptly filed this lawsuit. Doc. 22-1 at ¶¶ 18–23.

## IV. Procedural History

On July 21, 2022, the plaintiffs filed the complaint, Doc. 1, and moved for a temporary restraining order prohibiting enforcement of § 163-274(a)(9). Doc. 5. After notice and a quick hearing, Minute Entry 07/25/2022, the Court on July 25, 2022, issued a temporary restraining order, holding, *inter alia*, that the plaintiffs showed a likelihood of success on the merits of their claim that § 163-274(a)(9) facially violated the First Amendment. Doc. 16. The temporary restraining order enjoined District Attorney Freeman, in her official capacity as Wake County District Attorney, from enforcing § 163-274(a)(9) "against any person arising out of the Stein Committee's advertisement called 'Survivor' related to the Attorney General election in the fall of 2020," including seeking presentment or charges against those persons. Doc. 16 at 2.

## V. Injunctive Relief

To obtain a preliminary injunction, a party must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm if the injunctive relief is denied; (3) the balance of equities tips in its favor; and (4) injunctive relief is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *United*

4

*States v. South Carolina*, 720 F.3d 518, 533 (4th Cir. 2013). "Satisfying these four factors is a high bar," *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 385 (4th Cir. 2017), *cert. denied*, 139 S. Ct. 67 (2018), as a preliminary injunction is an "extraordinary remedy involving the exercise of very far-reaching power." *Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013) (cleaned up). A district court need not consider all four *Winter* factors if one is clearly absent. *See Henderson for NLRB v. Bluefield Hosp. Co.*, 902 F.3d 432, 439 (4th Cir. 2018).

A party seeking a preliminary injunction must make a "clear showing" that it is likely to succeed on the merits. *See Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 345 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010). This does not require the plaintiff to show a "certainty of success," *Pashby*, 709 F.3d at 321, but it is a higher standard than a showing that serious questions are presented. *See Real Truth*, 575 F.3d at 346–47.

## VI. Conclusions of Law

The plaintiffs contend that § 163-274(a)(9) is facially unconstitutional under the First Amendment because it regulates protected political speech in a manner not tailored to achieve a compelling state interest. Because § 163-274(a)(9) is a criminal libel law that prohibits false defamatory speech made with actual malice and withstands scrutiny appropriate for restrictions on false defamatory political speech, the plaintiffs are unlikely to succeed on the merits of their constitutional claim.

A plaintiff asserting a facial challenge "must establish that no set of circumstances exists under which an act would be valid." *Fusaro v. Howard*, 19 F.4th 357, 373 (4th

5

Cir. 2021) (cleaned up). A facial challenge is the "most difficult challenge to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987), and is generally disfavored. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008) (discussing reasons facial challenges are disfavored).

Section 163-274(a)(9) criminalizes the publication or circulation of false defamatory statements made with actual malice about candidates in a primary or election when the statements are intended to affect the candidate's electoral chances.[2] Content-based restrictions on false defamatory speech are permitted under the First Amendment, with appropriate safeguards. *See, e.g.*, *New York Times v. Sullivan*, 376 U.S. 254, 282–83 (1964) (requiring a heightened "actual malice" standard before imposing liability for defaming a public official); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974) (creating some limits on liability for defaming private figures).

This rule extends to criminal libel laws, of which § 163-274(a)(9) is a subset. *See Garrison v. Louisiana*, 379 U.S. 64, 67 (1964). *Garrison* is still good law, and it squarely says that criminal libel statutes prohibiting false defamatory statements made with actual

---

[2] Section 163-274(a)(9) specifically prohibits publication and circulation, with actual malice, of "derogatory reports with reference to any candidate in a primary or election." The Court understands a "derogatory report" to encompass false defamatory speech about a candidate and nothing more. *See, e.g.*, 50 Am. Jur. 2d *Libel & Slander* § 2 (2022) ("A cause of action for defamation is based on the transmission of derogatory statements[.]"). North Carolina case law regularly uses the word "derogatory" in defamation cases, *see, e.g.*, *Badame v. Lampke*, 242 N.C. 755, 757, 89 S.E.2d 466, 468 (1955); *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 32, 568 S.E.2d 893, 900 (2002); *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 487 (2008), and the North Carolina Supreme Court interprets statutes in ways that avoid constitutional problems. *See, e.g.*, *State v. Hilton*, 378 N.C. 692, 699–700, 862 S.E.2d 806, 812 (2021).

malice do not violate the First Amendment.[3]  *Id.* at 74–75; *see also Frese v. MacDonald*, 512 F. Supp. 3d 273, 285 (D.N.H. 2021) (holding a New Hampshire criminal libel statute was not unconstitutionally overbroad because it conformed with *Garrison*), *appeal filed*, No. 21-1068 (1st Cir. Jan. 27, 2021); *Phelps v. Hamilton*, 59 F.3d 1058, 1070–73 (10th Cir. 1995) (upholding a Kansas criminal defamation statute as facially valid after interpreting it to require actual malice); *see generally United States v. Alvarez*, 567 U.S. 709, 719 (2012) (citing with approval *Garrison*'s holding that in the context of false defamatory speech "even when the utterance is false, the great principles of the Constitution which secure freedom of expression . . . preclude attaching adverse consequences to any except the knowing or reckless falsehood").

Section 163-274(a)(9) meets those requirements.  Publication or circulation of "derogatory reports" is only criminal if the defamatory report is false and is published or circulated with knowledge it is false or in reckless disregard for its truth or its falsity.  *See* § 163-274(a)(9).

This, the defendants say, is the end of it:  if false defamatory speech published with actual malice is not entitled to First Amendment protection and if a criminal libel statute meets the constitutional requirements set forth in *Garrison* and *New York Times*, additional scrutiny is not required just because the statute prohibits only certain kinds of

---

[3] Courts that have invalidated criminal libel laws under the First Amendment have done so when the laws criminalized more speech than *Garrison* allows.  *See Mangual v. Rotger-Sabat*, 317 F.3d 45, 65–67 (1st Cir. 2003); *Fitts v. Kolb*, 779 F. Supp. 1502, 1514–16 (D.S.C. 1991); *Myers v. Fulbright*, 367 F. Supp. 3d 1171, 1175–78 (D. Mont. 2019); *In re I.M.L v. State*, 61 P. 3d 1038, 1042–48 (Utah 2002); *Gottschalk v. State*, 575 P.2d 289, 296 (Alaska 1978); *State v. Turner*, 864 N.W.2d 204, 207–09 (Minn. Ct. App. 2015).

false defamatory speech. The plaintiffs disagree. They cite the presumption against governmental content-based restrictions on speech, *see, e.g.*, *Alvarez*, 567 U.S. at 716–17 ("[T]he Constitution demands that content-based restrictions on speech be presumed invalid and that the Government bear the burden of showing their constitutionality") (cleaned up), and several post-*Alvarez* decisions finding that state statutes similar to § 163-274(a)(9) violate the First Amendment. *See Susan B. Anthony List v. Driehaus*, 814 F.3d 466, 476 (6th Cir. 2016); *281 Care Comm. v. Arneson*, 766 F.3d 774, 785 (8th Cir. 2014) (*281 Care Comm. II*); *see also Commonwealth v. Lucas*, 34 N.E.3d 1242, 1245 (Mass. 2015) (invalidating law under a cognate provision of the Massachusetts Constitution); *Rickert v. State*, 168 P.3d 826, 827 (Wash. 2007) (preceding *Alvarez*).

Because § 163-274(a)(9) is directed specifically at political speech in the context of an election, it is not enough that the statute passes muster under *Garrison*. Political speech in the context of an election is the kind of speech recognized as "the core of the protection afforded by the First Amendment." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995); *see also Buckley v. Valeo*, 424 U.S. 1, 14–15 (1976) (per curiam); *Eu v. S.F. Cnty. Democratic Cent. Comm.*, 489 U.S. 214, 223 (1989) ("[T]he First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office.") (quoting *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971)). The cases are legion that recognize the need to tread carefully when the government attempts to regulate political speech or speech on matters of public concern. *See generally McIntyre,* 514 U.S. at 346–47 (collecting cases addressing political speech); *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011) (collecting cases addressing

8

speech on matters of public concern); *State v. Taylor*, 379 N.C. 589, 598–99, 866 S.E.2d 740, 749 (2021) (collecting cases).

Section 163-274(a)(9) regulates political speech -- false defamatory political speech made with actual malice, but political speech nonetheless. The statute has the potential to chill protected speech – political speech that is not false, does not defame a candidate, or that is not made maliciously. In light of the need to provide "breathing space" for protected speech on matters of public concern, *Brown v. Hartlage*, 456 U.S. 45, 60–61 (1982), a significant state interest and narrow tailoring appropriate to that interest are required. *See McIntyre*, 514 U.S. at 347 (noting the "exacting scrutiny" directed to laws that burden core political speech); *Meyer v. Grant*, 486 U.S. 414, 420 (1988) (same); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (applying strict scrutiny to a law burdening political speech).

But the fact that the statute meets the requirements in *Garrison* is not irrelevant to the analysis, nor is the fact that the regulated speech is false and defamatory. Indeed, all nine justices in *Alvarez*, across the plurality, concurring, and dissenting opinions, agreed that speech's falsity is relevant to the First Amendment analysis. 567 U.S. at 721–22, 734–37 (Breyer, J., concurring), 746–49 (Alito, J., dissenting).[4]

*Alvarez* involved a criminal prosecution for a false statement that was not defamatory; it was a prosecution under the Stolen Valor Act for a false statement that the

---

[4] The justices disagreed, among other things, about the appropriate degree of protection applicable to false statements. *Id.* at 724, 730–31 (Breyer, J., concurring), 739 (Alito, J., dissenting).

9

speaker had received the Congressional Medal of Honor. 547 U.S. at 713. A plurality of four justices applied "exacting scrutiny" to the law at issue but recognized a number of permissible content-based restrictions, including those on defamation, *id.* at 717, and on fraudulent speech consisting of knowing or reckless falsehoods. *Id.* at 719. The two concurring justices applied intermediate scrutiny based on the context of the false statement at issue. *Id.* at 731–32 (Breyer, J., concurring). And the three dissenting justices said that "false statements of fact merit no First Amendment protection in their own right" absent a "valid purpose" or need to provide breathing room for protected speech. *Id.* at 748–51 (Alito, J., dissenting).

Here, as noted *supra*, North Carolina is criminalizing only a subset of criminal libel. This is a category of speech for which content-based restrictions are permissible, *see id.* at 717, assuming appropriate safeguards are in place. *See Garrison*, 379 U.S. at 67, 74–75. Under *Garrison*, the state could make all false defamatory statements made with actual malice a crime. *Id.* at 74–75. It is thus difficult to see how the state's decision to narrow the scope of a criminal libel statute to apply to a type of speech that causes additional societal harms is unconstitutional, assuming the statute protects against those harms and does not overreach.

The weight of the state's interests here cannot be questioned. First, its historical interest in protecting citizens from defamation, *see Alvarez*, 567 U.S. at 717, does not disappear because the citizen is a candidate for political office. States have an additional compelling interest in preventing fraud and libel in elections, which "may have serious adverse consequences for the public at large," *McIntyre*, 514 U.S. at 349, and in

10

"preserving the integrity of [their] election process." *Eu*, 489 U.S. at 231. As the Supreme Court presciently noted in 1964,

> At the time the First Amendment was adopted, as today, there were those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool to unseat the public servant or even topple an administration. That speech is used as a tool for political ends does not automatically bring it under the protective mantle of the Constitution. For the use of the known lie as a tool is at once at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected.

*Garrison*, 379 U.S. at 75 (cleaned up). And, as the plurality pointed out in *Alvarez*, there is no constitutional issue with statutes prohibiting false statements that "protect the integrity of Government processes, quite apart from merely restricting false speech." 567 U.S. at 721; *see also id.* at 717 (noting that fraud is one of the "historic and traditional categories" of false statements subject to appropriate content-based restrictions). An election is a government process of the most fundamental kind.

Section 163-274(a)(9) is narrowly tailored to meet these interests.

- The law applies only to false defamatory reports made with actual malice; since *New York Times*, this high standard has been repeatedly recognized as sufficient to protect the First Amendment rights of those engaged in speech about public figures.[5] *See Garrison*, 379 U.S. at 74–75; *Herbert v. Lando*, 441 U.S. 153, 169 (1979) (collecting cases); *Alvarez*, 567 U.S. at 719.

---

[5] In civil defamation suits involving false defamatory speech in a private context, the heightened actual malice standard is not required. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 757–61 (1985).

11

- To meet the goal of protecting government processes from fraud, the law includes a subjective intent requirement like those applied to regulate or prohibit fraudulent statements in other contexts. *See generally Illinois ex rel. Madigan v. Telemarketing Assoc., Inc.*, 538 U.S. 600, 620 (2003) (recognizing a complainant in an Illinois fraud action must show that the defendant made a knowingly false statement of material fact "with the intent to mislead the listener, and succeeded in doing so"); *State v. Taylor*, 379 N.C. 589, 607 n.8, 866 S.E.2d 740, 754 (2021) (noting that "[a]lthough there is not a consensus, many scholars agree that the First Amendment generally requires at least some consideration of a defendant's intent or state of mind when examining the permissible scope of civil or criminal liability for speech acts").

- To meet the goal of protecting the integrity of elections, the statute applies only to fraudulent defamatory statements with the potential to undermine an election: derogatory reports about a candidate intended to affect the candidate's electoral chances.

- The requirement of a derogatory report intended to affect a candidate's electoral chances imposes an implicit timing element: it must be speech around the time of an election. The prohibition is thus limited to false defamatory and malicious statements made during a time when false and malicious defamatory statements has the potential to gather momentum with little time for the often slower-to-surface factual counterspeech to be effective. *See Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)

(recognizing counterspeech is effective only "if there be time . . . through discussion [to counteract] the falsehood and fallacies"); *Alvarez*, 567 U.S. at 727–28 (citing *Whitney* concurrence with approval).

- The parties implicitly acknowledge that the statute targets only false statements about verifiable facts in elections. It does not restrict pure opinion or negative commentary. *See Milkovich v. Lorian J. Co.*, 497 U.S. 1, 18–22 (1990) (holding for a statement to be actionable as defamatory, it must expressly or impliedly assert facts that are objectively verifiable); *see generally Snyder*, 562 U.S. at 448, 452–53 (discussing First Amendment protections for opinions and negative commentary on matters of public concern).

- The law is not directed to a particular subject, unlike the statute at issue in *Alvarez*, 567 U.S. at 723 (noting the dangers of "compil[ing] a list of subjects about which false statements are punishable"). It applies only to false defamatory statements about candidates.

Because the speech that § 163-274(a)(9) prohibits—false defamatory speech about candidates intended to affect elections—must be made with actual malice and must be factual, the law provides appropriate "breathing space" for protected speech. *See Brown*, 456 U.S. at 60–61. The law does not trigger "absolute accountability for factual misstatements in the course of political [campaigns]." *Id.* at 61. Indeed, not even all falsehoods stated with actual malice fall within the statute's reach; it provides two additional limitations on its application: the maliciously false statement must be one, derogatory, i.e., defamatory, and two, made with the intent to "affect the chances" of an

13

electoral candidate. *See* § 163-274(a)(9). The statute is narrowly tailored to promote compelling state interests in protecting candidates for office from false defamatory statements, protecting governmental processes from fraud, and protecting elections from being undermined by "those unscrupulous enough and skillful enough to use the deliberate or reckless falsehood as an effective political tool." *Garrison*, 379 U.S. at 75.

The plaintiffs cite several recent cases decided in the wake of *Alvarez* and holding that state political false statement laws violated the First Amendment; they contend the cases support a finding that § 163-274(a)(9) is facially unconstitutional. *See Susan B. Anthony List*, 814 F.3d at 476; *281 Care Comm. II*, 766 F.3d at 785; *Rickert*, 168 P.3d at 827; *see also Lucas*, 34 N.E.3d at 1245 (holding law violated cognate provision in the Massachusetts Constitution). Those laws each incorporated an actual malice requirement and the Ohio, Minnesota, and Massachusetts laws had similar provisions limiting application to speech that was intended to influence an election. *See Susan B. Anthony List*, 814 F.3d at 469–70 (Ohio law); *281 Care Comm. II*, 766 F.3d at 778 (Minnesota law); *Lucas*, 34 N.E.3d at 1244 n.1 (Massachusetts law); *Rickert*, 168 P.3d at 828 (pre-*Alvarez* case evaluating Washington law).

But § 163-274(a)(9) has a further limitation; it includes a requirement that the speech be defamatory. As each of the courts recognized when invalidating the laws at issue, those laws did not have this limitation and criminalized all false statements intended to influence elections. *See Susan B. Anthony List*, 814 F.3d at 473; *Lucas*, 34 N.E.3d at 1249–50; *Rickert*, 168 P.3d at 828–29; *281 Care Comm. v. Arneson*, 638 F.3d 621, 634–36 (8th Cir. 2011) (*281 Care Comm. I*) (distinguishing between knowingly

14

false campaign speech and defamatory speech and directing the application of heightened scrutiny on remand); *281 Care Comm. II*, 766 F.3d at 785 (applying strict scrutiny and invalidating the Minnesota law). Section 163-274(a)(9) thus applies more narrowly than each of the laws held to be unconstitutional. This additional requirement moves the restricted speech back into a "historic and traditional category of expression" long recognized as subject to appropriate content-based restrictions. *Alvarez*, 567 U.S. at 717–18; *see also Garrison*, 379 U.S. at 74–75.

The plaintiffs also contend that the five tailoring concerns the Sixth Circuit identified in *Susan B. Anthony List* when reviewing Ohio's political false statement law apply here. 814 F.3d at 474. But those tailoring factors are not determinative for several reasons. First, the list of factors reads more like a means to bureaucratically undermine the holdings in *Garrison*, 379 U.S. at 74–75, and *New York Times*, 376 U.S. at 282–83, by making it impossible for a state to constitutionally regulate false and malicious lies about a candidate made during a campaign. Second, the Sixth Circuit would require at least two means of tailoring that appear mutually exclusive.[6] Third, the Sixth Circuit's approach disregards the Supreme Court's cautions that "a facial challenge must fail where the statute has a plainly legitimate sweep" and that courts "must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange*, 552 U.S. at 449–50.

---

[6] The Sixth Circuit would require a criminal libel statute to require quick action during the lead-up to an election, *see Susan B. Anthony List*, 814 F.3d at 474, while at the same time imposing a detailed and complicated set of multiple safeguards and procedural undertakings before such quick action could be taken. *See id.* at 474–75.

15

Putting aside those problems, the factors identified in *Susan B. Anthony List* do not apply with equal force to § 163-274(a)(9). The tailoring issues there, *see Susan B. Anthony List*, 814 F.3d at 473–76, stemmed in part from the Ohio law's broader sweep, which included all false non-material statements intended to influence an election.[7] As discussed *supra*, § 163-274(a)(9) prohibits only false defamatory speech about candidates, not false speech about a candidate generally. Thus, § 163-274(a)(9) is, on its face, more narrowly tailored.

In evaluating whether the statute provides sufficient breathing room, it is appropriate to account for the possibility that government officials might misuse § 163-274(a)(9) to prosecute political opponents, which could chill protected speech. But this risk is not enough to facially invalidate the statute. There are institutional protections from such prosecutorial abuses. The difficulties in succeeding on meritless charges, electoral consequences to prosecutors who bring them, and civil suits for malicious prosecution serve as guardrails against government officials pursuing opportunistic and meritless prosecutions against political opponents.

There is another protection for protected speech: the courts are available to curb overzealous application of the statute to particular speech if that application would violate the First Amendment. The North Carolina Supreme Court has shown its willingness to

---

[7] The Ohio law made it a crime to "[p]ost, publish, circulate, distribute, or otherwise disseminate a false statement concerning a candidate, either knowing the same to be false or with reckless disregard of whether it was false or not, if the statement is designed to promote the election, nomination, or defeat of the candidate." Ohio Rev. Code § 3517.21(B)(10).

16

do so, both by finding statutes to violate the First Amendment as applied and to require jury instructions that bring application of a regulation of speech within the bounds of the Constitution.[8]  *See, e.g.*, *Taylor*, 379 N.C. at 608–12.

## VII. Conclusion

False malicious defamatory speech can be "used as an effective political tool to unseat the public servant or even topple an administration" and can lead to volatile, unstable, and even violent results "at odds with the premises of democratic government and with the orderly manner in which economic, social, or political change is to be effected." *Garrison*, 379 U.S. at 75.  Because § 163-274(a)(9) is a criminal libel law that falls within a category of speech long subject to appropriate content-based restrictions; satisfies the requirements set forth in *Garrison*; and is appropriately narrowed to address legitimate and substantial governmental and public interests and to provide breathing room for protected speech, the plaintiffs' constitutional claim that § 163-274(a)(9) facially violates the First Amendment is not likely to succeed on the merits.

It is **ORDERED** that the plaintiffs' motion for a preliminary injunction, Doc. 5, is **DENIED**.  The temporary restraining order, Doc. 16, is **VACATED**.

This the 9th day of August, 2022.

_____
UNITED STATES DISTRICT JUDGE

---

[8] The Court expresses no opinion as to whether application of § 163-274(a)(9) to the arguably metaphorical speech here would be unconstitutional.

17