# EXHIBIT 1

# FINAL REPORT

May 28, 2021

| | |
|---|---|
| Complaint Number: | 2020-IR-140 |
| Complainant: | Friends of Jim O'Neill Candidate Campaign Committee |
| Complaint Date: | September 29, 2020 (Received by SBOE October 1, 2020) |
| Respondent: | Josh Stein and Josh Stein Candidate Campaign Committee |
| From: | Candace B. Marshall, Associate General Counsel |
| In RE: | Violation of 163-274(a)(9) Circulation of False Derogatory Reports |

## Introduction

On October 1, 2020, the NCSBE received a complaint from attorney Roger Knight on behalf of Friends of Jim O'Neill campaign committee alleging a violation of N.C.G.S. § 163-274(a)(9) against Josh Stein and Josh Stein for Attorney General Campaign Committee (campaign committee). The complaint alleges that Stein and his campaign committee deliberately and knowingly caused false and inaccurate reports to be circulated on a televised advertisement against his opponent, Jim O'Neill, in the race for Attorney General to affect his chances for election. Pursuant to N.C.G.S. § 163-22(d) and 163-278.22(7), it is the duty of the NCSBE to investigate alleged violations of Chapter 163 of the North Carolina General Statutes and report violations of law to the prosecutorial authority for prosecution or further investigation.

N.C.G.S § 163-274(a)(9) provides that it shall be unlawful for any person to publish or cause to be circulated derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity, when such report is calculated or intended to affect the chances of such candidate for nomination of election.

## Background

In North Carolina, Sexual Assault Evidence Collection Kit (SAECKs or "kit") are created and assembled in accordance to specifications determined by the NC State Crime Lab (SCL). Once created, SAECKs are distributed to medical facilities throughout the state for use during examinations when there has been a report of sexual assault. SAECKs are generated for both sexual assaults reported to law enforcement and for those unreported where the victim may choose to remain anonymous. Reported SAECKs are then turned over to law enforcement for further investigation and the kit is often submitted to a lab for testing.[1]

---

[1] See (Pg. 5-6) NCDOJ 2017 Sexual Assault Evidence Collection Kit Law Enforcement Inventory Report.

1

"As a criminal investigation progresses, the investigating law enforcement agency or district attorney's office may determine that a SAECK should not proceed to forensic testing." This is determined on a case by case basis.[2]

According to N.C.G.S. § 114-65(a), the General Assembly found that to further public safety, solve cases, prosecute offenders and bring justice to victims and prevent further crimes, that every sexual assault kit in North Carolina reported to law enforcement should be tested. The legislature determined that to develop an effective plan for testing kits, the state must first take inventory of all untested kits. Before the enactment of NC Session Law 2017-57, there was an unknown number of untested kits throughout the state in the possession of local law enforcement agencies.[3]

- **January 2017**- Josh Stein takes 1st term of office as NC Attorney General.
- **June 28, 2017** – NC Session Law 2017-57 – Appropriations Act of 2017 – was enacted and required each law enforcement agency in the state to conduct an inventory of SAECK in its custody and report that number to the NC State Crime Laboratory.
- **July 1, 2017- December 31, 2017** – Reporting period to conduct an inventory of SAECK under Session Law 2017-57 – Appropriations Act of 2017. According to the inventory report:
  - 571 law enforcement agencies across the state reported with 46 failing to report.
  - Survey found a total of 15,160 untested sexual assault kits statewide in LEO custody.[4]
  - Survey found a total of 1,509 untested kits in Forsyth County LEO offices to include:
    - Winston Salem Police Dept. – 1,339
    - Forsyth County Sheriff's Office – 96
    - Wake Forest University Police Dept. – 7
    - Kernersville Police Dept. – 65
    - NC School of the Arts – 2
    - Forsyth Technical Community College Campus Police – 0
- **March 1, 2018** – The NCDOJ and the SCL submitted to the General Assembly the 2017 Sexual Assault Evidence Collection Kit Law Enforcement Inventory Report.
- **June 25, 2018** – In response to the SAECK inventory report, NC Session Law 2018-70 was signed into law.
- **October 1, 2018** – Statewide SAECK tracking system is launched.
- **September 18, 2019** – NC Session Law 2019-221 (Survivor Act 2019) was signed into law.

---

[2] See (pg. 5-6) NCDOJ 2017 SAECK Law Enforcement Inventory Report.

[3] See Executive Summary (pg.4) in the NCDOJ 2017 SAECK Law Enforcement Inventory Report.

[4] See (pg. 9) NCDOJ 2017 SAECK Law Enforcement Inventory Report. State law directs DPS to provide a storage location for submission of anonymous SAECKs in the event the victim later wishes to report a crime. DPS reported 862 unreported/anonymous kits in its custody. These 862 are in addition to the 390 unreported/anonymous kits in the possession of LEAs.

Case 1:22-cv-00568-CCE-JLW   Document 31-1   Filed 08/12/22   Page 3 of 8

## Factual Summary

1.) Josh Stein and Stein's campaign committee hired a media/tv consulting firm to produce a televised advertisement. The ad was created the end of August 2020 and was scheduled to run on various and multiple dates.[5] The ad features two photos of Jim O'Neill along with his name in front of what purports to be a blank SAECK. The ad also prominently features images of Josh Stein, law enforcement officers and the voice over and image of Juliette Grimmett, referred to only as Juliette. Grimmett provides the voice over throughout the entire ad. She makes the following statement which O'Neill claims is false.

> *"And when I learned that Jim O'Neill left fifteen hundred rape kits sitting on a shelf leaving rapists on the streets, I had to speak out. Jim O'Neill cannot be our Attorney General."*

2.) Juliette Grimmett, NCDOJ Sexual Assault Victim Policy Strategist, was invited by Seth Dearmin, Stein's current Chief of Staff and former campaign manager, to appear in the ad. Both Grimmett and Dearmin deny any compensation for her appearance in the ad.

3.) In an interview with Dearmin, he took full responsibility for creating and approving the script used by Grimmett during the ad and explains the purpose for including the statement was to refute prior false claims publicly made and repeated by Jim O'Neill from 2019-2020.[6] Dearmin further explains that O'Neill's statements accused Stein of leaving 15,000 kits on the shelves at the SCL.

4.) Dearmin advised that he had authorization to approve the full content of the ad and wanted to tell the truth about how many kits were left untested in O'Neill's "backyard" as O'Neill had claimed the number of untested kits that remained at the SCL under Stein's supervision as the State's Attorney General.

5.) A cease and desist letter, dated October 2, 2020, was sent from Crumpler, Freedman, Parker & Witt Attorneys at Law on behalf of Jim O'Neill to Grimmett demanding that she immediately stop disseminating "clearly false and defamatory advertisement". The letter also requested that she take further action to denounce prior statements made and prevent further publication.

6.) There is no record of a cease and desist letter sent to Josh Stein or his campaign committee.

---

[5] NCSBE Investigators requested information from Stein's campaign committee on specific dates, time and frequency of the advertisement run time. Channels unknown. Additional information will be included in the exhibit folder once received. Ad, dated 9/24/2020, may currently be viewed on YouTube.

[6] See SBOE-Timeline and O'Neill Quotes submitted by Seth Dearmin.

3

7.) In response to the cease and desist demand letter, Pressly Millen, Counsel for Josh Stein and Stein's campaign committee, criticized the attorneys for addressing the letter to a sexual assault survivor and re-emphasized the truth of Grimmett's statement made during the ad. In addition, Millen explained that Stein's campaign had already planned to phase out the use of that particular advertisement featuring Grimmett due to the normal course of the campaign.

## Discussion

It is undisputed that Josh Stein's campaign committee created the script and produced a statewide televised advertisement causing derogatory[7] claims to be circulated in opposition of then candidate O'Neill and in support of Stein's candidacy. It is also undisputed that the campaign advertisement was created during the 2020 General Election cycle and for the purposes of negatively affecting the chances of electing candidate O'Neill for Attorney General and in supporting re-election of candidate Stein.

However, this agency identifies two issues that should be further examined: (1) are the statements false or considered to be in reckless disregard of the truth and (2) did Stein and his campaign committee have knowledge that the statements made were false or in reckless disregard of the truth. The accusation is that O'Neill left 1,500 untested sexual assault kits sitting on a shelf and thereby implying that the perpetrators behind those assaults are left uncharged and unprosecuted.

1.) False or in Reckless Disregard of the Truth

The NCSBE investigators find that the standard practice and procedure for the collection of reported SAECKs, lab forensic testing, and storage and custodial control of evidence generally lies with the investigating law enforcement agency.[8] According to District Attorney O'Neill, the District Attorney's office does not oversee or authorize when or if kits should be sent to a lab for testing. Additionally, O'Neill claims, District Attorneys have no role in determining the testing of kits. The kits are solely in LEO custody for investigation and the DA should not interfere with this part of the investigation.

O'Neill also claims that policies set by the SCL (under Stein's supervision as the Attorney General) discourage the testing of kits under certain circumstances to include victims who wish to remain anonymous, cases where the offender is known but consent is contested, cases where the offender has already disposed of their matters in court and allegations that were determined unfounded after further investigation.[9] O'Neill asserts that

---

[7] Per the definition of derogatory, it is likely undisputed that the statements were intended to lessen the reputation of O'Neill. See https://www.dictionary.com/browse/derogatory ("tending to lessen the merit or reputation of a person or thing; disparaging; depreciatory; a derogatory remark").

[8] See 143B-601 Powers and Duties of the DPS and (pg. 5) 2017 Sexual Assault Evidence Collection Kit Law Enforcement Inventory Report.

[9] See (pg. 7) 2017 Sexual Assault Evidence Collection Kit Law Enforcement Inventory Report where LEO was required to report untested kits based on certain categories. Except under these instructions, NCSBE investigators were unable to verify such policies with the SCL.

4

due to these policies, to quote 1,500 untested kits, is a misrepresentation of how many kits actually remained that could be tested. An argument could be made that O'Neill's failure to act is technically false. This is supported by claims that his office was never in control or custodial possession of the kits, that there is no oversight of testing kits while in LEO possession by his office and that SCL policies do not necessitate certain kits to be tested.

In contrast, Dearmin asserts that the statements made during the ad are true. He claims that pursuant to Article IV, Sec. 18 of the NC Constitution, District Attorneys have a clear role in advising law enforcement on criminal matters and particularly in the testing of SAECKs. While acknowledging that the untested kits are not generally held in the custody of the elected DA, Stein's campaign argues that the kits were in O'Neill's "backyard" and that DAs should have some broad level knowledge and responsibility of the number of SAECKs tested and untested in their county by virtue of their capacity as the elected DA. Additionally, Dearmin asserts that DAs across the state were put on notice to act and assist LEO agencies in their district to comply with the Legislative directive to inventory and clear out the back log of untested kits.

While this agency finds no known statutory authority that requires the District Attorney to oversee SAECK testing and storage, we also find no known statutory authority or policy that prohibits DA's from reviewing and conducting their own inventory of untested kits in their district. Therefore, an argument could also be made that O'Neill in his capacity and authority as the elected DA, could have inquired and acted to assist in eliminating those remaining untested kits in his district in the interests of justice. If this interpretation is adopted, the falsity of Stein's claim is arguably ambiguous and therefore inconclusive.

2.) Knowingly

Knowingly by definition is to commit an act with knowledge, information, or belief in and not because of mistake or accident or some other innocent reason.[10] Stein's campaign committee does not refute their knowledge or intent of making the claims against O'Neill. However, to satisfy this element, it must also be concluded that the statement quoted in the ad was false. According to Dearmin, all statements made were believed to be truthful and were intended to debunk the false statements made against Stein.

**Additional Discussion**

As noted above in the factual summary, the NCSBE investigation revealed additional information that is not a part of this original complaint but could be considered for additional investigation of a possible violation against O'Neill.

In our interviews with Dearmin, it was alleged that O'Neill publicly made false statements on at least three separate occasions against Stein in his capacity as the Attorney General that are similarly worded in context to the claims made in this complaint. The statements appeared to have been made during and after the official filing and declaration of

---

[10] See NC Pattern Jury Instruction 212.10 for Criminal Cases and https://www.dictionary.com/browse/knowingly (having knowledge or information, intentional, deliberate).

candidacy for the 2020 General Election for both candidates and for the intended purposes of affecting the chances of re-election of Stein for Attorney General. The statements claim that there are 15,000 untested sexual assault kits sitting on a shelf in the state crime lab in Raleigh and Stein's lack of priority to clear out the backlog of those kits. The assumption is that O'Neill was referring to the 15,160 untested sexual assault kits found statewide as reported in the 2017 SAECK Law Enforcement Inventory Report. However, when asked to clarify these statements, he responded that he could not recall the exact wording. Dearmin produced the following to our investigators:

> *December 14, 2019 - North State Journal - "When I look at the 15,000 sexual assault kits sitting up on the shelves in Raleigh, and our current attorney general not making that a priority until three and a half years into his four-year term, it just makes me mad as fire."*

> *January 18, 2020 - WRAL - "The only time that the rape kits became important to Attorney General Josh Stein was when I came out in January [2019] and announced I was running against him, because I was tired of 15,000 untested rape kits sitting up on the shelves collecting dust."*

> *February 5, 2020 - Smoky Mountain News - "In January, when I announced, I had had enough of the thought of 15,000 rape kits sitting up on the shelves at the lab that (Stein's) responsible for and he's done absolutely nothing about."*

### Recommendation

Alleged violations of N.C.G.S. § 163-274(a)(9) are infrequent. However, for reference, John Bruce, former NCSBE Deputy General Counsel, drafted a memo[11] examining an allegation of this same statute in January 2019. In this matter, Bruce found that while the statements could have been interpreted as exaggeration, ultimately could not be categorized as false. Additionally, he found that the respondent's knowledge of the falsity or the reckless disregard of the falsity or truthfulness of the statements was inconclusive. Bruce made the following recommendation in his memo to former Executive Director Kim Strach and former General Counsel Joshua Lawson.

*"If the State Board is going to make a referral for criminal prosecution based on statements made by one candidate about another candidate in the rough-and-tumble of a political campaign, the case should be a strong one. It should be clear that the candidate knew his statements were false, or that he recklessly disregarded the truth in making the statements." It is not feasible for the State Board to become "fact checkers" for political campaigns. Even though § 163A1388(a)(9) is likely constitutional on its face (see ¶¶ 19-21, supra), applying it to statements whose falsity is at all ambiguous may be an unconstitutional application of the statute."*[12]

---

[11] See *Memorandum re The Scott Dacey Committee* (2018-CF-069)

[12] See (pg. 12) *Memorandum re The Scott Dacey Committee* (2018-CF-069)

6

The NCSBE finds that the facts and circumstances in this matter renders two plausible interpretations on the falsity of the statement. Similarly to Bruce's analysis above in the Dacey memo, it should be clear with supporting evidence that Stein and his campaign committee knew the statement of leaving 1,500 rape kits on a shelf was undoubtedly false or made with reckless disregard of the truth and not an exaggeration. Instead, the falsity of the statement draws ambiguity and therefore, it is inconclusive to determine a clear violation of N.C.G.S. § 163-274(a)(9) occurred. Additionally, the NCSBE is concerned that if a violation is found, this might be an unconstitutional application of the statute.

Due to the foregoing findings in this report, the NCSBE recommends that this investigation be closed. If this agency becomes aware of new facts that were not known at the time the original complaint was filed, then a new complaint may be filed, and further investigation pursued.