FILED: August 23, 2022

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1844
(1:22-cv-00568-CCE-JLW)

JULIETTE GRIMMETT; RALSTON LAPP GUINN MEDIA GROUP; JOSH STEIN FOR ATTORNEY GENERAL CAMPAIGN,

    Plaintiffs - Appellants,

    v.

N. LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District for the State of North Carolina,

    Defendant - Appellee.

O R D E R

PER CURIAM:

In 2020, Josh Stein and Jim O'Neill were engaged in a heated campaign to serve as attorney general of North Carolina. The Stein campaign ran an advertisement the O'Neill campaign believes was false. Stein ultimately won the election.

Now, nearly two years later, the district attorney's office in Wake County has indicated that it plans imminently to seek an indictment against Josh Stein's campaign (and others involved in producing the advertisement) under a state criminal libel statute. The potential targets of the investigation sought a preliminary injunction against the district

attorney, which the district court denied. The Stein campaign and its affiliates appealed and seek an injunction pending appeal.

We conclude plaintiffs have satisfied the demanding standard for obtaining an injunction pending appeal. Most critically, plaintiffs have made a "strong showing that [they are] likely to succeed on the merits" of their First Amendment challenge. *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quotation marks omitted).

At the outset, we note that neither the district court nor the district attorney have suggested that abstention in favor of the state criminal process is appropriate in this case. In the First Amendment context, the Supreme Court has recognized that a plaintiff who has "alleged a credible threat of enforcement" may generally "bring a preenforcement challenge" in federal court. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). Although federal courts must usually abstain from exercising their jurisdiction to issue injunctive relief if a "state criminal prosecution[ ]" has already begun, *Younger v. Harris*, 401 U.S. 37, 53 (1971), abstention is not warranted when "proceedings of substance on the merits have taken place in federal court" *before* any relevant state proceeding has occurred. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (quotation marks omitted). And here it appears undisputed that no grand jury proceedings had commenced before the district court considered the merits of this case when it denied the motion for a preliminary injunction.

We therefore turn to the merits of plaintiffs' First Amendment challenge. The North Carolina statute at issue criminalizes publishing "derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless

2

disregard of its truth or falsity." N.C. Gen. Stat. § 163-274(a)(9). Because this statute regulates "core political speech," First Amendment concerns are at their "zenith" and we must subject the statute to particularly careful constitutional examination. *Buckley v. American Const. Law Found., Inc.*, 525 U.S. 182, 186–87 (1999) (quotation marks omitted).

Like the district court, we acknowledge that a nearly 60-year-old decision of the Supreme Court states that a "*lie*, knowingly and deliberately published about a public official" may potentially be the subject of a criminal prosecution. *Garrison v. Louisiana*, 379 U.S. 64, 75 (1964) (emphasis added). Plaintiffs have questioned whether that holding remains viable under modern First Amendment doctrine. But, even accepting *Garrison* as good law, that same decision made clear that the First Amendment does not permit a State to criminalize "true statements," even those "made with 'actual malice.'" *Id.* at 78. And it appears the law challenged here does just that by criminalizing a "derogatory report" made *either* "knowing such report to be false *or* in reckless disregard of its truth or falsity."[1]

Plaintiffs also have demonstrated that irreparable harm is likely absent an injunction. Infringing constitutional rights generally constitutes irreparable harm, see *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987), and plaintiffs have credibly alleged that

---

[1] At this point, we are not persuaded by the district court's apparent conclusion that "derogatory" necessarily means false. See D. Ct. ECF 23 at 6 n.2. The ordinary meaning of "derogatory" is "[l]essening in good repute; detracting from estimation; disparaging." *Derogatory*, The Practical Standard Dictionary of the English Language (1936); see also *State v. Petersilie*, 432 S.E.2d 832, 834, 842 (N.C. 1993) (holding that a statute criminalizing "derogatory charges against candidates" "clearly does" cover "even truthful statements"). Plenty of perfectly true statements might reflect badly on a person and lessen their good repute.

3

their political speech will be chilled should a prosecution go forward. For instance, at least one of the named plaintiffs in this case—the public relations firm behind the advertisement—has indicated that a criminal prosecution would require it to "reconsider" whether it would "continue to work with North Carolina campaigns and candidates," D. Ct. ECF 5-2 at 4.

On the other side of the ledger, the district attorney primarily contends that the two-year limitations period is about to run, jeopardizing her power to prosecute should she ultimately prevail in this appeal. It appears that any such injury is, at least to some extent, self-inflicted, because the district attorney has not adequately explained why it was necessary to wait so long to bring charges in a case where the alleged crime was broadcast on television nearly two years ago. In any event, plaintiffs have represented to this Court that they are willing to agree to a reasonable stipulation tolling the limitations period, mitigating the impact of any such injury.[2] And to the extent the State has an interest in regulating false campaign speech (in this case or generally), the district attorney has not explained why an ordinary civil defamation action is inadequate to the task.

An injunction pending appeal also serves the broader public interest. Candidates currently running for office in North Carolina might well be chilled in their campaign speech by the sudden reanimation of a criminal libel law that has been dormant for nearly a century—harming the public's interest in a robust campaign. After all, "it is our law and

---

[2] To avoid future doubt: We accept that representation as truthful and rely on it in issuing our order today.

4

our tradition that more speech, not less, is the governing rule," *Citizens United v. FEC*, 558 U.S. 310, 361 (2010), and that the general remedy for even "falsehood and fallacies" "is more speech, not enforced silence," *Linmark Assocs. v. Willingboro Township*, 431 U.S. 85, 97 (1977) (quoting *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring)).

For these reasons, plaintiffs' motion for an injunction pending appeal is GRANTED and it is ORDERED that defendants are enjoined from taking any action to enforce N.C. Gen. Stat. § 163-274(a)(9) against plaintiffs pending further order of this Court.

The motion to expedite this appeal is GRANTED IN PART. Specifically, the Clerk is directed to set a briefing schedule that will allow this appeal to be argued during this Court's regular December 2022 sitting.

Entered at the direction of Judge Heytens with the concurrence of Judge Diaz. Judge Rushing filed a separate dissenting opinion.

         For the Court

         /s/ Patricia S. Connor, Clerk

RUSHING, Circuit Judge, dissenting:

I respectfully dissent. Plaintiffs have not shown that they are entitled to the "extraordinary relief" of "an injunction against enforcement of a presumptively constitutional state legislative act" pending their appeal from the district court's denial of exactly that relief. *Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010). The Supreme Court has admonished that "[o]rdinarily, there should be no interference" with a State's enforcement of its criminal statutes. *Younger v. Harris*, 401 U.S. 37, 45 (1971) (internal quotation marks omitted). Because Plaintiffs have failed to show the "extraordinary circumstances" necessary to justify our interference at this stage, *id.*, I would deny their request to enjoin North Carolina officials from enforcing North Carolina law pending our consideration of the merits.

Notably, Plaintiffs have not demonstrated they would suffer irreparable harm during the pendency of this expedited appeal absent injunctive relief. No Plaintiff claims that their speech is currently being chilled, or will imminently be chilled, because of the possible future enforcement of the North Carolina statute. The plaintiff public relations firm avers that it "intends to continue to work with North Carolina campaigns and candidates" but "will need to reconsider [its] position in the event that political advertising in North Carolina becomes a subject of criminal law enforcement." D. Ct. ECF 5-2 at ¶ 12. That doubly qualified statement cannot support a finding of irreparable harm, especially when the political advertisement the State is investigating was last aired almost two years ago and no Plaintiff claims an interest in airing that advertisement, or a similar one, during this expedited appeal.

6

On the other side of the balance, the Wake County district attorney's interest is significant. As the majority acknowledges, the two-year limitations period apparently will soon expire, and if we enjoin the grand jury proceedings, the State will forever lose its opportunity to enforce the law. The majority purports to know, on an undeveloped record, that the district attorney's injury is "self-inflicted." I do not agree with that reading of the limited record, and the State certainly does not owe us a more detailed explanation of its internal investigation and deliberative process to justify enforcing its laws within the relatively brief time period allotted by the state legislature. Moreover, I do not see how the majority's proposed tolling stipulation between Plaintiffs and the district attorney would preserve the district attorney's ability to prosecute the potential targets of the grand jury investigation, which by all accounts include individuals who are not parties to this lawsuit.

As for the public interest, the majority's speculation about the current campaign cycle is out of place when its injunction does not reach any current campaign but is restricted to these Plaintiffs and their political advertisement that last aired almost two years ago. The people of North Carolina have an interest in letting North Carolina's courts construe this untested state statute in the normal course if it is actually enforced. Even absent our intervention, an indictment may never issue—yet another reason to stay our hand and follow the customary course of deciding constitutional questions on appeal only after due deliberation.